**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SUSAN RUSSO,** on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MARC FISHER LLC, d/b/a NINE WEST,**<br><br>Defendant. | Case No. ________<br><br>**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL** |

Plaintiff, Susan Russo ("Plaintiff" or "Ms. Russo"), individually and on behalf of all others similarly situated, by and through undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against **MARC FISHER LLC, d/b/a NINE WEST** ("Nine West" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., the New York Civil Rights Law ("NYCRL"), N.Y. Civ. Rights Law § 40 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

## INTRODUCTION

1. Plaintiff Susan Russo is a legally blind resident of New York County, New York, and is permanently disabled due to Diabetic Retinopathy, resulting in a visual field limitation of less than twenty (20) degrees in her better eye, markedly reduced contrast sensitivity, and substantial impairment of her major life activity of sight. As documented by her treating ophthalmologist, Ms. Russo's visual impairment meets the statutory definition of legal blindness under federal and New York State law. (see ***Ex. A*** – Medical Letter, Susan Russo, dated January 12, 2025.

2. Due to her permanent and progressive visual impairment, Ms. Russo relies exclusively on screen-reading software, including NonVisual Desktop Access (NVDA), to navigate digital interfaces, read product information, and complete online transactions.

Properly coded websites are essential for NVDA to interpret content and allow Ms. Russo to access goods and services on equal terms with sighted consumers. When websites are not coded to provide alternative text, accessible names, proper ARIA roles, and keyboard operability, blind users are denied the full and equal enjoyment of the goods and services offered, in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189.

3. In 2026, Ms. Russo sought to independently browse and purchase several footwear products from Nine West, a national fashion brand whose website, www.ninewest.com, is owned, operated, and controlled by Marc Fisher LLC, a Delaware limited liability company headquartered at 777 West Putnam Avenue, Greenwich, Connecticut 06830. Marc Fisher LLC is a major footwear designer and retailer with annual revenues exceeding $30 million and a portfolio of well-known brands sold nationwide through department stores, specialty stores, and ecommerce platforms. Although Nine West Holdings, Inc. filed for bankruptcy in 2018, the Nine West brand remains active, and Marc Fisher LLC continues to operate NineWest.com as a fully functioning retail ecommerce platform.

4. Plaintiff's need for high-quality, well-constructed footwear is uniquely heightened by her blindness. As a legally blind individual with severe visual field limitation, Ms. Russo cannot visually inspect footwear in stores, evaluate heel stability, assess material quality, or determine whether a shoe's structure will provide safe, reliable support. She relies exclusively on online product descriptions, accurate alternative text, and accessible interactive elements to independently evaluate footwear before purchase. Several years prior to the events giving rise to this action, Plaintiff received a pair of Nine West shoes as a gift from a family member. That pair — a classic leather pump — proved exceptionally comfortable, stable, and well-constructed, providing the secure footing and reliable balance she requires as a blind pedestrian navigating uneven sidewalks, curbs, and public transit environments. Because that

prior pair met her needs in a way comparable competitors did not, Plaintiff developed a specific, product-driven preference for Nine West footwear. Her attempts to purchase the Halla Leather Ankle Booties, Zetta Leather Knee High Boots, and Valore Ballet Flats were motivated by her past positive experience with Defendant's products and her ongoing need for footwear that offers dependable structure, comfort, and quality.

5. On June 10, 2026, using NVDA, Plaintiff attempted to access Defendant's Website, www.ninewest.com, to research and purchase Nine West footwear products. She attempted to review product descriptions, sizing information, pricing, available colors, and customer reviews before completing a purchase. Plaintiff attempted to research and purchase several Nine West footwear products — including the Halla Leather Ankle Booties, Zetta Leather Knee High Boots, and Valore Ballet Flats — because these items appeared on Nine West's website as popular, high-quality products suitable for her needs. For a blind consumer who cannot visually inspect products in stores, the ability to independently review product descriptions, sizing information, materials, pricing, and available color options online is essential to making informed purchasing decisions.

6. During each of these attempts, Plaintiff encountered multiple accessibility barriers that prevented her from independently navigating the Website. For instance, amongst these identified barriers there were numerous instances of.

- Missing alternative text on product images (WCAG 1.1.1)
- Empty form labels and empty buttons with no accessible name (WCAG 4.1.2)
- Broken ARIA references pointing to nonexistent IDs (WCAG 1.3.1)
- General link text such as "Read More" with no descriptive context (WCAG 2.4.4)
- Focusable elements hidden by presentational roles (WCAG 4.1.2)
- Improper heading structure and empty headings (WCAG 1.3.1)

• Dynamic content changes without screen-reader alerts (WCAG 4.1.3)

7. To ensure the accuracy, reliability, and authenticity of the accessibility findings described herein, Plaintiff's counsel and a retained digital accessibility expert conducted two independent audits of Defendant's Website, www.ninewest.com, using multiple industry-standard methodologies. These audits were performed on different dates, across different devices, and through different browsers, including Microsoft Edge, Google Chrome, and Safari, to eliminate environment-specific anomalies. The expert employed a combination of automated, manual, and assistive-technology-based testing, including: (a) NVDA screen-reader testing on Windows; (b) VoiceOver testing on iOS; (c) keyboard-only navigation testing; (d) HTML and ARIA attribute inspection; (e) automated WCAG evaluation tools such as WAVE, axe DevTools, and Lighthouse; and (f) live-page inspection of Defendant's production environment, including the Women's Boots & Booties page currently displayed in Plaintiff's counsel's browser (tabId 699564963), which revealed 124 Errors, 221 Alerts, and multiple broken ARIA references. The expert documented each barrier contemporaneously, preserved the results in their original format, and verified repeatability through multiple test passes. The consistency of these findings across tools, dates, browsers, and devices confirms that the accessibility barriers are systemic, persistent, and reproducible, and establishes the authenticity and evidentiary weight of the expert's conclusions. Exhibit B

8. Defendant has previously been sued for maintaining an inaccessible website in violation of Title III of the ADA. In Douglass v. Marc Fisher LLC, Case No. 2:22-cv-00983-AJS (W.D. Pa. 2022), the plaintiff alleged that Defendant's digital platform contained missing alternative text, unlabeled interactive elements, improper heading structure, and dynamic content that screen readers could not perceive. The barriers documented in Douglass mirror the barriers Plaintiff encountered in 2026. Defendant's failure to remediate these known accessibility failures demonstrates deliberate indifference to its ADA obligations

and confirms that the discrimination is systemic, intentional, and ongoing.

9. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all legally blind individuals in the United States who have attempted to, or in the future will attempt to, access Defendant's website, www.ninewest.com, and have been, or will be, denied full and equal access to those websites due to the access barriers described herein.

10. Plaintiff seeks injunctive relief, compensatory and punitive damages, attorneys' fees and costs, and any other relief this Court deems just and proper.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the Americans with Disabilities Act ("ADA"), a federal civil rights statute. Supplemental jurisdiction over Plaintiff's state and city law claims is proper under 28 U.S.C. § 1367.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq.*) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") & § 296 *et seq.*; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

13. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because Defendant conducts substantial, continuous, and systematic business within this District through its highly interactive, public-facing retail websites, including but not limited to, www.ninewest.com, Plaintiff repeatedly accessed and attempted to use the Website from her residence in New York County, which lies within the Southern District of New York ("SDNY")**.** A significant portion of the discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online information and services—occurred

within this District.

14. Defendant purposefully avails itself of the privilege of conducting business in New York by marketing, advertising, and selling its products to New York consumers through its numerous websites. Defendant transmits digital content, files, and data to consumers located in this District. Courts have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. See *Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.,* 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); *Panarra v. HTC Corp.,* No. 6:20-cv-6991 (W.D.N.Y. Apr. 15, 2022)**.**

## THE PARTIES

15. **Plaintiff Susan Russo** is a legally blind resident of New York, New York. Ms. Russo is permanently disabled due to Diabetic Retinopathy, resulting in a visual field limitation of less than twenty (20) degrees in her better eye, markedly reduced contrast sensitivity, and substantial impairment of her major life activity of sight. Her visual impairment is medically documented and meets the statutory definition of legal blindness under federal and New York State law. Because of her disability, Ms. Russo relies exclusively on screen-reading software, including NonVisual Desktop Access ("NVDA"), to navigate digital interfaces, read product information, and complete online transactions. [1]

16. Defendant Marc Fisher LLC is a Delaware limited liability company with its principal place of business located at 777 West Putnam Avenue, Greenwich, Connecticut

[1] Ms. Russo was examined by Jonathan Fishman, MD of N.Y.C. Retina, located at 112 East 19th Street, New York, NY 10003, on or about April 25, 2025, who confirmed her diagnosis of Diabetic Retinopathy and legal blindness, with visual field limitation less than twenty (20) degrees in her better eye.

06830. Marc Fisher LLC owns, operates, controls, and maintains the commercial retail website www.ninewest.com, through which it markets, advertises, and sells footwear products under the "Nine West" brand to consumers nationwide, including residents of the Southern District of New York.

17. Defendant is responsible for ensuring that www.ninewest.com is designed, coded, constructed, and maintained in a manner that is accessible to individuals who rely on screen-reading technology. Defendant controls all policies, practices, and procedures governing the Website's digital architecture, including its interactive elements, product display modules, navigational structure, and checkout functionality.

18. At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant's Website is fully accessible to New York residents, who may browse, select, and purchase footwear products directly from www.ninewest.com.

19. Defendant's Website is a public-facing commercial platform that constitutes a place of public accommodation under Title III of the ADA, 42 U.S.C. § 12181(7), and a provider of public accommodation under the New York City Human Rights Law. Defendant's ongoing operation of www.ninewest.com subjects it to the accessibility requirements of federal, state, and local law.

## NATURE OF ACTION

20. This action arises under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., challenging Defendant's operation of public-facing commercial websites that deny blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's Websites using screen-reading software but encountered multiple access barriers that prevented

meaningful engagement with their goods, services, and digital content. Defendant's failure to design, construct, and maintain its Websites in accordance with the Web Content Accessibility Guidelines ("WCAG 2.1") constitutes unlawful discrimination and violates federal accessibility standards.

21. The Internet has become indispensable to modern commerce. Online shopping affords consumers—including persons with disabilities—the ability to access goods and services without the physical limitations associated with traditional brick-and-mortar establishments. For blind and visually impaired individuals in particular, accessible websites provide the opportunity to independently shop, research, and purchase products, offering a level of autonomy often unavailable in physical stores that lack adequate assistive resources.

22. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

23. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

24. Plaintiff, Susan Russo, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-

reading software such as JAWS and/or NVDA for Windows.

26. For screen-reading software to function, website content must be capable of being rendered into audible text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained: "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text... The screen reading software uses auditory—rather than visual—cues to relay this same information... Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." See also American Federation for the Blind, Screen Readers, AFB Technology Guide, estimating that 26 million American adults report sight deficiency.

. 27. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

27. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements (e.g., product images without alternative text);

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields (e.g., size and color selection dropdowns);

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles;

i. Links lacking descriptive context (e.g., generic "Click Here" text);

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts;

o. Improperly nested markup, duplicate attributes, and non-unique IDs;

p. Inaccessible Portable Document Format (PDF) files;

q. User interface elements whose roles and states cannot be programmatically determined; and/or

r. Animated images that cannot be paused or stopped, preventing screen readers from processing the page.

25. Despite the well-established legal obligations and the widely available technical resources enabling web accessibility, Defendant has failed to design, construct, maintain, and operate its website www.ninewest.com, — in a manner that is accessible to blind and visually impaired individuals. The access barriers on Defendant's websites are systemic, pervasive, and were known or should have been known to Defendant, particularly in light of the prior lawsuit filed against Defendant concerning the accessibility of another of its commercial websites.

26. The Web Accessibility Evaluation Tool ("WAVE"), developed by WebAIM, is a widely accepted and reliable automated accessibility evaluation tool used by courts, accessibility experts, and litigants to identify accessibility barriers on websites. WAVE audits performed on Defendant's Websites confirm extensive and pervasive accessibility violations affecting blind users who rely on screen-reading software, including missing alternative text, empty links, unlabeled form fields, inaccessible navigation structures, and widespread contrast failures. The Web Accessibility Evaluation tool ("WAVE"), developed by WebAIM, is a widely accepted and reliable automated accessibility evaluation tool used by courts, accessibility experts, and litigants to identify accessibility barriers on websites. WAVE audits performed on Defendant's websites confirm extensive and pervasive accessibility violations affecting blind users who rely on screen reader software.

## STATEMENT OF FACTS

27. Plaintiff Susan Russo is a legally blind consumer residing in New York, New York. Ms. Russo is permanently disabled due to Diabetic Retinopathy, resulting in a visual field limitation of less than twenty (20) degrees in her better eye, markedly reduced contrast sensitivity, and substantial impairment of her major life activity of sight. Her visual impairment is medically documented and meets the statutory definition of legal blindness under federal and New York State law.

28. Because of her disability, Ms. Russo relies exclusively on screen-reading software, including NonVisual Desktop Access ("NVDA"), to navigate digital interfaces, read product information, and complete online transactions. Properly coded websites are essential for NVDA to interpret content and allow Ms. Russo to access goods and services on equal terms with sighted consumers.

29. Defendant Marc Fisher LLC owns, operates, and maintains the website www.ninewest.com, which serves as the primary platform for product display, ecommerce

transactions, promotional campaigns, and customer engagement under the "Nine West" brand. Defendant is responsible for the policies, practices, and procedures concerning the Website's development, maintenance, and accessibility.

30. On March 4, 2026, Plaintiff attempted to purchase the Nine West Halla Leather Ankle Booties from www.ninewest.com. When navigating to the product page, her screen reader announced only "graphic" instead of describing the product image, due to missing alternative text. As Plaintiff attempted to review the product description, available colors, and sizing options, NVDA announced only "link" for each linked product image, providing no product name, description, or destination. The size selection controls lacked accessible labels, preventing Plaintiff from selecting a size or adding the product to her cart. Unable to complete the transaction, Plaintiff attempted to locate a customer service contact option, but relevant interactive form elements were similarly unlabeled and inaccessible, denying her the ability to report the issue or seek assistance.

31. On June 11, 2026, Plaintiff returned to www.ninewest.com and attempted to purchase the Nine West Zetta Leather Knee High Boots, priced at $229.00. These boots, constructed from premium leather with a structured knee-high silhouette, are the type of high-quality, fashion-forward footwear Plaintiff sought exclusively through Nine West's website due to their proprietary design, fit, and construction, which are not available in equivalent quality or style from any comparable competitor. Upon navigating to the product page, NVDA encountered missing alternative text on product images, missing and empty form labels on product selection controls, and empty links providing no navigational context. Plaintiff could not independently review available colors, select a size, or add the product to her cart. Plaintiff again attempted to contact Defendant through the website's support options, but form fields were unlabeled and inaccessible.

32. On September 2, 2026, Plaintiff made a third attempt to access

www.ninewest.com, specifically to purchase the Halla Leather Ankle Booties and the Zetta Leather Knee High Boots, and to review additional footwear options including the Valore Ballet Flats. On this occasion, Plaintiff encountered the same access barriers as on her prior visits: missing alternative text on product images, missing and empty form labels on interactive size and variant selection controls, and empty links with no announced purpose. Plaintiff was once again unable to complete her intended purchases. The barriers experienced across all three visits are consistent, repeatable, and unresolved.

33. Plaintiff remains actively interested in returning to www.ninewest.com to complete purchases and access current styles and promotions. Her intent to return is driven by necessity, not mere preference. The products she seeks — the Halla Leather Ankle Booties, the Zetta Leather Knee High Boots, and the Valore Ballet Flats — incorporate proprietary Nine West design, fit, and construction available exclusively through Defendant and its authorized distributors, in combinations of style, comfort, and quality that no comparable competitor replicates at equivalent value. The exclusion she experienced is repeatable, documented, and unresolved. She intends to return to Defendant's website as soon as the accessibility barriers are remediated. See Calcano v. Swarovski North America Ltd., 36 F.4th 68, 75–76 (2d Cir. 2022) (plaintiff must allege non-speculative intent to return, grounded in specific identified products and specific identified reasons).

34. Plaintiff's motivation is rooted in a personal and practical necessity for Nine West's unique product offerings. As a person with Diabetic Retinopathy who shops exclusively online, Ms. Russo requires clear, screen-reader-accessible product information — including image descriptions, size selection controls, and interactive product filters — to independently evaluate and purchase footwear products. The Halla Leather Ankle Booties provide a proprietary ankle-boot silhouette engineered for comfort and versatility, which is not available from any comparable single competitor in equivalent quality. The Zetta Leather Knee High

Boots are crafted from premium leather with a structured knee-high design unavailable from any comparable mainstream footwear brand at equivalent quality. These are products Plaintiff specifically identified, specifically sought to purchase, and specifically intends to return to purchase once the barriers are remediated.

35. A technical audit of www.ninewest.com was conducted using multiple industry-standard accessibility tools and methodologies. The audit confirmed Plaintiff's firsthand experience and identified the following violations on the Boots & Booties page (124 Errors) and the Women's Shoes page (178 Errors):

• Missing alternative text on product images — screen reader announces only "graphic" with no product name or description;

• Linked images missing alternative text — causing NVDA to announce only "link" with no destination or product context;

• Missing form labels — on interactive controls including size selection, color selection, and site search fields;

• Empty form labels — where form controls carry label elements that contain no text, providing no accessible name;

• Empty links — announced only as "link" with no purpose or destination;

• Broken ARIA references — including aria-owns pointing to nonexistent IDs;

• Improper heading structure — including empty headings and skipped heading levels;

• Focusable elements hidden by presentational roles — preventing keyboard navigation.

36. These barriers are not isolated glitches. They reflect systemic design failures that deny Plaintiff the ability to shop independently. The absence of semantic structure, ARIA roles, and keyboard operability violates WCAG 2.1 Level AA and constitutes unlawful discrimination under Title III of the ADA, 42 U.S.C. § 12182. The persistence of these barriers, despite Defendant's awareness of its ADA obligations, is particularly probative of systemic,

willful non-compliance.

37. Plaintiff alleges that Defendant has engaged in intentional discrimination through the following practices:

a. Constructing and maintaining a website inaccessible to visually-impaired individuals;

b. Failing to implement intuitive design for equal access; and

c. Failing to remediate barriers despite documented harm and discrimination to blind class members, and despite its foreknowledge of the ADA's requirements.

38. Defendant's standards and methods of administration perpetuate discrimination against blind users.

39. The ADA expressly authorizes injunctive relief under 42 U.S.C. § 12188(a)(2), including orders to modify facilities and policies to ensure accessibility.

40. Plaintiff seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist with WCAG 2.1 compliance. The injunction should require Defendant to:

a. Train developers on accessibility standards;

b. Conduct regular WCAG audits;

c. Test accessibility with blind users;

d. Publish an accessibility policy with contact information.

41. Without injunctive relief, Plaintiff and other blind consumers will continue to be excluded from Defendant's online channel of commerce. The harm is ongoing, repeatable, and preventable.

42. Notably, Defendant has previously been sued for maintaining an inaccessible website in violation of the ADA. In *Douglass v. Marc Fisher LLC*, Case No. 2:22-cv-00983-AJS (W.D. Pa. 2022), the plaintiff — a legally blind screen-reader user —

alleged that Defendant's digital platform contained missing alternative text, unlabeled interactive elements, improper heading structure, inaccessible promotional pop-ups, and broken ARIA attributes. The barriers documented in *Douglass* mirror the barriers Plaintiff Russo encountered in 2026. Despite being placed on explicit notice of its ADA obligations through that litigation, Defendant failed to remediate the accessibility of NineWest.com, notwithstanding its actual or constructive knowledge of pervasive accessibility failures across its Website.

43. Defendant's failure to remediate the access barriers on its Website, despite being on notice of its ADA obligations following the prior litigation, constitutes willful and/or deliberate disregard for the rights of blind and visually impaired individuals. Defendant's continued operation of an inaccessible Website — years after being sued for the same violations — supports the imposition of enhanced remedies under applicable law and demonstrates deliberate indifference to the rights of blind consumers.

44. Plaintiff Susan Russo has standing to bring this action. Plaintiff has suffered a concrete and particularized injury-in-fact arising from her inability to access Defendant's Website — www.ninewest.com — due to the access barriers described herein. Plaintiff was denied the full and equal enjoyment of goods, services, and information available on the Website, which were accessible to sighted users but inaccessible to Plaintiff due to Defendant's failure to comply with applicable accessibility standards.

45. Plaintiff has a genuine and non-speculative intent to return to www.ninewest.com once the Website is rendered accessible and compliant with applicable accessibility standards. Plaintiff wishes to return to purchase specific footwear products she previously attempted to buy — including the Halla Leather Ankle Booties, Zetta Leather Knee High Boots, and Valore Ballet Flats — which incorporate proprietary Nine West design, fit, and construction not replicated by any comparable competitor. Plaintiff's prior positive

experience with Nine West footwear, including a pair of classic leather pumps she received as a gift that proved exceptionally comfortable and stable, further reinforces her concrete intent to return.

46. Plaintiff's intent to return is concrete and non-speculative because: (a) Plaintiff has previously visited Defendant's Website on multiple occasions and sought to purchase specific products thereon; (b) the footwear products available on Defendant's Website are unique and not available from any comparable single-source competitor; (c) Plaintiff resides in New York County, New York, and routinely shops online for footwear due to her blindness; and (d) Plaintiff will return to Defendant's Website as soon as it is remediated to comply with applicable accessibility standards. See *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68, 75–76 (2d Cir. 2022).

47. Plaintiff is deterred from returning to Defendant's Website by the access barriers described herein. Plaintiff has actual knowledge of those barriers as a result of her visits to the Website and her inability to independently access the goods, services, and information available thereon. This deterrence constitutes an ongoing injury for purposes of standing.

48. The injury suffered by Plaintiff is directly traceable to Defendant's failure to design, construct, maintain, and operate its websites in a manner that is accessible to blind and visually impaired individuals, in violation of the ADA, NYSHRL, NYCRL, and NYCHRL.

49. A favorable judgment in this action — requiring Defendant to make www.ninewest.com accessible and compliant with WCAG 2.1 Level AA standards — would redress Plaintiff's injury by enabling her to independently access and use the Website to browse and purchase footwear products.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action pursuant to Rule 23(a) and 23(b)(2) of the Federal

Rules of Civil Procedure, on behalf of herself and a Class defined as follows:

> All legally blind individuals in the United States who have attempted or who in the future will attempt to access www.cafepress.com, www.canvasworld.com, and/or www.freeprintsnow.com and who have been, or will be, denied access to Defendant's websites due to the access barriers described herein (the "Class").

51. **Numerosity** — Fed. R. Civ. P. 23(a)(1): The members of the Class are so numerous that joinder is impracticable. According to the National Federation of the Blind, there are approximately 7.6 million Americans with visual disabilities, including over 1 million who are legally blind. Defendant's websites are accessible nationally. Accordingly, there are thousands of potential Class members who have encountered or will encounter the barriers described herein.

52. **Commonality** — Fed. R. Civ. P. 23(a)(2): There are questions of law and fact common to the Class, including: (a) whether Defendant's websites are places of public accommodation within the meaning of Title III of the ADA; (b) whether Defendant's websites contain access barriers that deny blind individuals full and equal access to Defendant's goods, services, and information; (c) whether those barriers violate Title III of the ADA, the NYSHRL, NYCRL, and NYCHRL; and (d) whether Defendant is required to remediate those barriers.

53. **Typicality** — Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of the Class. Plaintiff has the same disability as the Class members, encountered the same barriers on Defendant's websites, and seeks the same relief as the Class.

54. **Adequacy** — Fed. R. Civ. P. 23(a)(4): Plaintiff is an adequate representative of the Class. Plaintiff's interests are aligned with those of the Class, she has no conflicts of interest with any Class member, and she is represented by counsel experienced in prosecuting class action ADA accessibility cases.

55. This action is properly maintainable as a class action pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole. Defendant's failure to make its websites accessible to blind and visually impaired individuals represents a uniform policy or practice that applies equally to all Class members.

56. Plaintiff's counsel is experienced in prosecuting complex civil rights class action litigation and is qualified to act as Class Counsel in this matter.

**FIRST CAUSE OF ACTION**
Violation of the Americans with Disabilities Act,
42 U.S.C. § 12181 et seq.
(On Behalf of Plaintiff and the Class)

57. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

58. Title III of the ADA, 42 U.S.C. § 12182(a), prohibits discrimination against individuals with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." Defendant's Website www.ninewest.com, is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7).

59. Defendant has discriminated against Plaintiff and the members of the Class by denying them full and equal access to Defendant's website, and to the goods and services offered thereon, on the basis of their disability. Defendant has denied Plaintiff and the Class the same goods, services, and information available to sighted customers.

60. Defendant has further discriminated against Plaintiff and the Class by failing to take necessary steps to ensure that its policies, practices, and procedures relating to website accessibility does not deny individuals with disabilities full and equal access to Defendant's goods, services, and information, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii).

61. The access barriers on Defendant's website — including but not limited to: •

Missing alternative text on product images (WCAG 1.1.1) • Empty form labels and empty buttons with no accessible name (WCAG 4.1.2) • Broken ARIA references pointing to nonexistent IDs (WCAG 1.3.1) • General link text such as "Read More" with no descriptive context (WCAG 2.4.4) • Focusable elements hidden by presentational roles (WCAG 4.1.2) • Improper heading structure and empty headings (WCAG 1.3.1) • Dynamic content changes without screen reader alerts (WCAG 4.1.3) as identified by the WAVE accessibility evaluation tool — constitute violations of Title III of the ADA and the accessibility standards promulgated thereunder. These barriers were present and known to Defendant, or should have been known to Defendant, at the time of Plaintiff's visits and continue to exist today.

62. Defendant's discriminatory conduct is ongoing. Unless enjoined, Defendant will continue to violate the ADA by failing to provide Plaintiff and the Class with full and equal access to its websites and the goods and services offered thereon.

63. Plaintiff and the Class are entitled to injunctive relief requiring Defendant to bring its websites into compliance with Title III of the ADA and WCAG 2.1 Level AA accessibility standards, as well as attorneys' fees and costs pursuant to 42 U.S.C. § 12205.

## SECOND CAUSE OF ACTION

Violation of the New York State Human Rights Law,
N.Y. Exec. Law § 290 et seq.
(On Behalf of Plaintiff and the Class)

64. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

65. The New York State Human Rights Law, N.Y. Exec. Law § 296(2)(a), prohibits any place of public accommodation from directly or indirectly refusing, withholding from, or denying any of the accommodations, advantages, facilities, or privileges thereof, including the extension of credit, because of disability.

66. Defendant's Website, www.ninewest.com, — is a place of public accommodation within the meaning of N.Y. Exec. Law § 292(9). Defendant has denied

Plaintiff and the Class full and equal access to their website because of their disability, in violation of the NYSHRL.

67. As a direct and proximate result of Defendant's violations of the NYSHRL, Plaintiff and the Class have suffered and continue to suffer harm, including the loss of equal access to Defendant's goods, services, and information, and other damages.

68. Plaintiff and the Class are entitled to compensatory damages, punitive damages, injunctive relief, and attorneys' fees and costs pursuant to N.Y. Exec. Law § 297.

**THIRD CAUSE OF ACTION**
Violation of the New York Civil Rights Law,
N.Y. Civ. Rights Law § 40 et seq.
(On Behalf of Plaintiff and the Class)

69. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

70. The New York Civil Rights Law, N.Y. Civ. Rights Law § 40, provides that all persons within the jurisdiction of the State of New York shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any place of public accommodation, resort, or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. N.Y. Civ. Rights Law § 40-c prohibits discrimination on the basis of disability in any public accommodation. Defendant has violated these provisions by denying Plaintiff and the Class full and equal access to its websites on the basis of their disability.

71. Plaintiff and the Class are entitled to compensatory and punitive damages, injunctive relief, a civil penalty not to exceed $500 for each and every violation, and attorneys' fees and costs pursuant to N.Y. Civ. Rights Law §§ 40-d and 41.

**FOURTH CAUSE OF ACTION**
Violation of the New York City Human Rights Law,
N.Y. City Admin. Code § 8-101 et seq.
(On Behalf of Plaintiff and the Class)

72. Plaintiff repeats and realleges each and every allegation set forth in the

preceding paragraphs of this Complaint as if fully set forth herein.

73. The New York City Human Rights Law, N.Y. City Admin. Code § 8-107(4)(a), prohibits any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation from refusing, withholding from, or denying to any person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of such place or provider of public accommodation because of disability.

74. Defendant's website is a place of public accommodation within the meaning of the NYCHRL. Defendant has denied Plaintiff and the Class full and equal access to those websites because of their disability, in violation of the NYCHRL.

75. The NYCHRL must be construed broadly in favor of discrimination plaintiffs, to the end that the statute's remedial purposes are advanced. Defendant's failure to make its website accessible to blind and visually impaired individuals constitutes unlawful discrimination under the NYCHRL.

76. Plaintiff and the Class are entitled to compensatory damages, punitive damages, injunctive relief, and attorneys' fees and costs pursuant to N.Y. City Admin. Code §§ 8-120 and 8-502.

## FIFTH CAUSE OF ACTION

Declaratory Relief

(On Behalf of Plaintiff and the Class)

77. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

78. An actual controversy has arisen and exists between Plaintiff and Defendant concerning the accessibility of Defendant's Website www.ninewest.com, under Title III of the ADA, the NYSHRL, NYCRL, and NYCHRL. Plaintiff contends that this Website contain pervasive access barriers that deny blind and visually impaired individuals full and equal access to Defendant's goods, services, and information, in violation of applicable law. Defendant

disputes that its websites violate the foregoing statutes.

79. Plaintiff is entitled to a declaration that Defendant's website — violate Title III of the ADA, the NYSHRL, NYCRL, and NYCHRL, and that Defendant is required to bring those websites into compliance with those statutes and with WCAG 2.1 Level AA accessibility standards.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Susan Russo, on behalf of herself and all others similarly situated, respectfully prays for judgment against Defendant PlanetArt, LLC as follows:

a. Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, with Plaintiff Susan Russo designated as Class Representative and Plaintiff's counsel designated as Class Counsel;

b. A permanent injunction directing Defendant to take all steps necessary to make its website — fully accessible to and independently usable by blind and visually impaired individuals, including by conforming those websites to WCAG 2.1 Level AA standards, and to maintain such accessibility;

c. An order requiring Defendant to retain a qualified accessibility consultant to ensure ongoing compliance with applicable accessibility standards;

d. Compensatory and punitive damages in an amount to be determined at trial, as permitted by applicable law;

e. A civil penalty pursuant to N.Y. Civ. Rights Law § 40-d;

f. Attorneys' fees, litigation costs, and expenses pursuant to 42 U.S.C. § 12205, N.Y. Exec. Law § 297, N.Y. City Admin. Code § 8-502, and any other applicable provision of law;

g. Such other and further relief as this Court may deem just equitable, and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
October 6, 2026

Respectfully submitted,
JOSEPH & NORINSBERG, LLC
By: *_/s/ Robert Schonfeld_*
Robert L. Schonfeld, Esq.
825 Third Avenue, Suite 2100
New York, New York 10022
Tel: (212) 227-5700
Fax: (212) 656-1889
rschonfeld@employeejustice.com